United States District Court
Southern District of Texas
ENTERED
October 27, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARTHA ARMIJO, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 2:25-CV-00103 |
| | § | |
| BEE COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Bee County's motion for summary judgment. (D.E. 24). Plaintiff alleges her supervisor sexually harassed her, disciplined her after she refused his advances, and ultimately fired her after she reported the harassment. Defendant moves for summary judgment on Plaintiff's claims for hostile work environment, quid pro quo sexual harassment, and retaliation. Plaintiff's hostile work environment and quid pro quo claims survive summary judgment because there is a genuine fact dispute about the reason Bee County disciplined her. But because Plaintiff fails to show that Defendant's stated reason for termination was pretextual, Defendant is entitled to summary judgment on Plaintiff's retaliation claim. Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendant's motion for summary judgment. (D.E. 24).

## I. Background

On a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party. *Crose v. Humana Ins. Co.*, 823 F.3d 344, 347 (5th Cir. 2016). Plaintiff, a Hispanic female, worked as a jailer in Bee County. (D.E. 27-10, p. 12). During her employment,

Plaintiff's supervisor, Freddie Bullock, made several sexual advances and comments to Plaintiff. *Id.* at 26–30. Plaintiff refused Bullock's advances. *Id.* at 29.

At some point after Bullock made his advances, Plaintiff was reprimanded for allowing an inmate at the jail to obtain a multi-tool. *Id.* at 43. But Plaintiff testified that she was actually written up for refusing Bullock's sexual advances, and that she was not at the jail on the date the inmate obtained the multi-tool. *Id.* Defendant authorized an independent investigation into the incident, which concluded that the write-up was justified. (D.E. 24-2, p. 2); *see also* (D.E. 24-3, p. 2).

Bee County conducted a separate investigation into Bullock's conduct after Plaintiff complained. (D.E. 27-10, p. 79–83). During the investigation, Bee County Chief Deputy Ronnie Jones offered Plaintiff the night shift to avoid working with Bullock, but she declined. *Id.* at 98. Jones also instructed her not to interact with Bullock and assigned an employee to escort Bullock if he was around Plaintiff at the jail. *Id.* Plaintiff also testified, however, that Bee County forced her to work alongside Bullock on several occasions after her complaint. *Id.* at 79–83.

Bee County terminated Plaintiff in July 2023 after she was arrested for disturbing a gravesite. (D.E. 33-1, p. 7–11); (D.E. 24-8, p. 1). At some point, Plaintiff filed a charge with the Equal Employment Opportunity Commission, though the parties dispute when Defendant received notice that Plaintiff filed her charge. *See* (D.E. 34, p. 2). This lawsuit follows.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is

material if it "might affect the outcome of the suit under the governing law[.]" *Id.* In determining whether a judgment as a matter of law is appropriate, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The "court must view the evidence 'in the light most favorable to the [nonmovant].'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (first quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); and then citing *Anderson*, 477 U.S. at 255). A court is not required to search the record for evidence supporting a party's opposition to summary judgment. *Stults v. Conoco, Inc.*, 76 F.3d 651, 657 (5th Cir. 1996); *see also Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

The movant bears the "initial responsibility" to present evidence proving that no genuine dispute of material fact exists, but the movant does not have to present evidence "negating the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis omitted). If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). If the movant meets this burden, then the burden shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party "must identify specific evidence in the summary judgment record" and demonstrate how that evidence supports their claim. *See Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (internal quotations and citations omitted). The nonmoving party's burden cannot be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotations and citation omitted). If the nonmovant fails to meet this burden, then the movant is entitled to summary judgment. *Little*, 37 F.3d at 1076.

**B. Hostile Work Environment**

"Title VII recognizes two types of sexual harassment claims: quid pro quo and hostile work environment claims." *Cerda v. Blue Cube Operations, LLC*, 95 F.4th 996, 1003 (5th Cir. 2024) (citation modified). To establish a hostile work environment claim, a plaintiff must prove five elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff is subject to unwelcome harassment; (3) the harassment is based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment and failed to act promptly to address it. *Id.* (citations omitted). A plaintiff need not provide independent proof of the fifth element, however, if the harassment comes from a plaintiff's immediate or successively higher supervisor. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

In some circumstances, a defendant may assert an affirmative defense against a hostile work environment claim known as the *Faragher-Ellerth* affirmative defense. A defendant may assert the *Faragher-Ellerth* affirmative defense against a hostile work environment claim if (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) the harassed employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. *Williams v. Admin Rev. Bd.*, 376 F.3d 471, 478 (5th Cir. 2004). The *Faragher-Ellerth* defense is only available to defend against hostile work environment claims, not quid pro quo claims. *Faragher*, 524 U.S. at 808. So, if the workplace harassment culminates in a tangible employment action such as discharge, demotion, or an undesirable

assignment, the *Faragher-Ellerth* defense is not available because the claim is actually a quid pro quo claim. *Id.*

**C. Quid Pro Quo**

To make out a prima facie case of quid pro quo sexual harassment under Title VII, a plaintiff must establish five elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff is subject to unwelcome harassment; (3) the harassment is based on sex; (4) the plaintiff's refusal of the unwelcome harassment causes a tangible employment action; and (5) there exists some ground to hold the employer liable. *House v. Interline Brands, Inc.*, 464 F. App'x 402, 404 (5th Cir. 2012) (per curiam) (citing *Collins v. Baptist Mem'l Geriatric Ctr.*, 937 F.2d 190, 195–96 (5th Cir. 1991)). A tangible employment action is an employment decision regarding "hiring, firing, compensation, or the term, conditions, or privileges of employment." *Hamilton v. Dallas County*, 79 F.4th 494, 506 (5th Cir. 2023).

**D. Retaliation**

Retaliation claims are analyzed under the *McDonnel Douglas* burden-shifting framework. *Royal v. CCC & R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (citation omitted). Under that framework, the burden initially rests on the plaintiff to establish a prima facie case of retaliation. If the plaintiff does so, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the employment action. If the defendant does so, the burden shifts back to the plaintiff to prove that the employer's proffered reason is merely pretext for retaliation. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 607–08 (5th Cir. 2005) (citing *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 807)).

To establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) the plaintiff engaged in protected activity, (2) an adverse employment action occurred, and (3) there

is a causal link between the plaintiff engaging in the protected activity and the adverse employment action. *Royal*, 736 F.3d at 400 (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007)). "Under Title VII, an employee has engaged in protected activity if she has opposed any practice made an unlawful employment practice under [Title VII]." *Turner*, 476 F.3d at 348 (citation modified).

## III. Discussion

### A. The Collapse and Waiver of the Hostile Work Environment Claim

As a threshold matter, Defendant contends that Plaintiff's Title VII sexual harassment claims for hostile work environment and quid pro quo collapse into just one quid pro quo claim. (D.E. 24, p. 1, 10). The Court disagrees.

The first step in analyzing a claim of sexual harassment under Title VII is to determine whether the plaintiff has suffered a "tangible employment action." *Williams v. Barnhill's Buffet Inc.*, 290 F. App'x 759, 761 (5th Cir. 2008) (per curiam) (citing *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000)). If the plaintiff has suffered a tangible employment action, then their claim is one for quid pro quo; if the plaintiff has *not* suffered a tangible employment action, then their claim is one for hostile work environment. *Id.* Nonetheless, the Fifth Circuit has indicated these claims may exist simultaneously. *See Alaniz v. Zamora-Quezada*, 591 F.3d 761, 776–77 (5th Cir. 2009) ("*Casiano* said nothing about whether employers can be held liable on both [hostile work environment and quid pro quo] theories of liability."). Rather, the distinction is relevant only for determining whether a defendant may raise the *Faragher-Ellerth* affirmative defense. *Id.*[1]

[1] The Fifth Circuit recently broadened "tangible employment" to include the "term, conditions, or privileges of employment" which is identical to the fourth element of a hostile workplace claim. *Id.* Although this may suggest that all hostile workplace claims contain a tangible employment action and, therefore, are also quid pro quo claims, this Court understands the expanded definition of "tangible employment action" to include actions such as reassignment, and that a line remains between quid pro quo and hostile workplace claims. Consequently, the Court presumes the *Faragher-Ellerth* defense survives. *See Hawthorne v.*

Furthermore, the Court is not persuaded that Plaintiff abandoned her hostile work environment claim. Defendant cites the following deposition testimony: "Q: [f]air assessment that your claims regarding sexual discrimination are a tit-for-tat-based claim? A: Yes." (D.E. 27-10, p. 23). The testimony does not show Plaintiff intended to abandon any claim, and she briefed both the hostile work environment and quid pro quo theories of liability. (D.E. 27, p. 1–8). The Court therefore addresses Plaintiff's hostile work environment and quid pro quo claims separately.

**B. Hostile Work Environment**

Defendant moves for summary judgment on Plaintiff's hostile work environment claim, contending both that Plaintiff has failed to establish her prima facie case and that Defendant is entitled to the *Faragher-Ellerth* affirmative defense. (D.E. 24, p. 14–16). The Court disagrees.

As to Plaintiff's prima facie case, Defendant argues that the alleged harassment "did not affect a term, condition, or privilege of employment." *Id.* at 14. Specifically, Defendant points to Chief Deputy Jones' testimony that an independent investigation found the disciplinary write-ups against Plaintiff were justified. (D.E. 24-2, p. 2) ("Lt. Investigator Levine's investigation revealed that the disciplinary actions taken against [Plaintiff] since March 2022, appeared to be justified and not harsher than against other staff."); *see also* (D.E. 24-3, p. 2) (Lt. Investigator Levine's investigative report).

In response, Plaintiff highlights her deposition testimony that she was disciplined because she turned down Bullock's advances. (D.E. 27-3, p. 1). Specifically, Plaintiff describes that she was disciplined for allowing an inmate to obtain a multi-tool, despite not being on the premises during that alleged incident. *Id.* Plaintiff and Defendant therefore present conflicting evidence of

---

*Birdville Independent School District*, No. 4:23-cv-301-BP, 2024 WL 1607071 (N.D. Tex. April 12, 2024) (Ray, Mag. J.) (treating the *Faragher-Ellerth* defense as viable post-*Hamilton*).

the reason for the disciplinary action, creating a genuine dispute of material fact as to whether the alleged harassment affected a term, condition, or privilege of employment.

As to Defendant's *Faragher-Ellerth* affirmative defense, the Court finds that genuine disputes of material fact again preclude summary judgment. Defendant points to its policies and procedures to prevent and correct sexual harassment in the workplace. *See generally* (D.E. 24-10). Plaintiff, however, has provided competent summary judgment evidence that she was forced to work alongside Bullock even after submitting her complaint. (D.E. 27-10, p. 78–81) (Plaintiff's deposition testimony that Bee County officials "forced" Plaintiff to work alongside Bullock after she filed a complaint and told her to "yell and scream" if Bullock harassed her again).

Thus, although Defendant's policies may be sufficient to show Defendant took reasonable steps to prevent sexual harassment, Plaintiff has created a fact dispute as to whether Defendant exercised reasonable care to prevent *and correct* the sexual harassment. *Santiero v. Denny's Rest. Store*, 786 F. Supp. 2d 1228, 1235 (S.D. Tex. 2011) (Miller, J.) ("It must be remembered that the *Ellerth*/*Faragher* affirmative defense is premised upon an employer taking affirmative, preemptive steps to avoid sexual harassment in the workplace, and then following through on those rules by remedying any reported harassment."); *see also Williams*, 376 F.3d at 478.

Accordingly, the Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim. (D.E. 24).

**C. Quid Pro Quo**

Defendant advances four arguments in favor of summary judgment on Plaintiff's quid pro quo claim: (1) Plaintiff was not harassed at work, (2) Bullock did not promise a promotion in exchange for Plaintiff acquiescing to his advances, (3) Plaintiff did not suffer a tangible job

detriment, and (4) there are no grounds to hold Defendant liable because it took prompt measures to remedy the harassment. (D.E. 24, p. 13). None of Defendant's arguments are persuasive.

First, Defendant's arguments regarding where the harassment occurred has no bearing on Plaintiff's prima facie case of quid pro quo sexual harassment. Defendant has cited no case law establishing the relevance of the location of Plaintiff's harassment, and the Court found none. Whether Plaintiff is harassed at work or outside of work, the relevant inquiry is whether Plaintiff suffered unwelcome harassment at all. *See House*, 464 F. App'x at 404.

Second, the Court need not decide whether Bullock promised Plaintiff a promotion because Plaintiff testified Bullock wrote her up unfairly. (D.E. 27-3, p. 1). Indeed, Defendant does not contest that being formally disciplined is a tangible job detriment. Rather, Defendant resorts back to its earlier argument that an independent investigation concluded that the write-ups Plaintiff received were justified. But as the Court already explained, Plaintiff has created a genuine dispute of material fact as to the reason she was written up. Therefore, Defendant's third argument fails.

Finally, Defendant argues that no grounds exist to hold it liable because it did not learn of the harassment until almost a year after it occurred, and once it did learn, Defendant took prompt measures to separate Plaintiff and Bullock. Defendant cites no caselaw in support of its argument. Regardless, the Court notes that the harassment came from Plaintiff's supervisor which, at least in the hostile work environment context, relieves Plaintiff from the duty to show that her employer knew or should have known of the harassment. *Faragher*, 524 U.S. at 807. Furthermore, as discussed above, the Court finds that Plaintiff has created a genuine dispute of material fact that she was forced to work with Bullock even after submitting a complaint about his sexual harassment. (D.E. 27-10, p. 78–81). Accordingly, the Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's quid pro quo claim. (D.E. 24).

**D. Retaliation**

Finally, Defendant argues it is entitled to summary judgment on Plaintiff's retaliation claim because (1) Defendant terminated Plaintiff before it learned of her sexual harassment complaint, and (2) in the alternative, Plaintiff has failed to show pretext as required under the *McDonnel Douglas* burden-shifting framework. The Court agrees with Defendant.

Assuming without deciding that Plaintiff has made out a prima facie case of retaliation, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff. *Septimus*, 399 F.3d at 607–08. Defendant has met that burden here: Defendant states that it terminated Plaintiff because "she was arrested and booked into the Bee County Jail for a criminal offense based on a magistrate finding probable cause for her arrest." (D.E. 24, p. 17). Indeed, Plaintiff's letter of termination cites that reason as grounds for termination. (D.E. 24-8, p. 1).

The burden therefore shifts back to Plaintiff to show the cited reason is pretext for retaliation, but Plaintiff fails to do so. Plaintiff argues the "totality of the circumstances, the proximity of the termination to the procedural status of the EEOC case, and the circumstantial evidence provided" establish pretext. (D.E. 33, p. 5). Specifically, Plaintiff contends "[w]hat is relevant to the pretextual termination is that everyone interviewed and everyone doing the investigation [into the gravesite] are aware of Plaintiff's claim for sexual assault." *Id.* at 4.

Plaintiff, however, fails to cite any Fifth Circuit precedent supporting her argument, relying instead on a single case from the District of Massachusetts. *Id.* at 2 (citing *Fournier v. Exec. Off. of the Trial Ct.*, 498 F. Supp. 3d 193, 213 (D. Mass. 2020) (Saylor, J.). Although *Fournier* recognized that "the sequence and proximity of events can establish that an employer's proffered justification for the adverse employment action was pretextual," 498 F. Supp. at 213 (citation omitted), in the Fifth Circuit, temporal proximity between protected conduct and the adverse

employment action does not alone demonstrate pretext. *Brown v. Wal-Mart Stores East, LP*, 969 F.3d 571, 579 (5th Cir. 2020) (citing *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007)). And to the extent Plaintiff relies on Defendant's purported knowledge of Plaintiff's report,[2] "additional evidence beyond mere knowledge is necessary to demonstrate that the employer's proffered reason for the action is pretextual." *Shannon v. Henderson*, 275 F.3d 42, *4 (5th Cir. 2001) (per curiam). In short, Plaintiff has presented no evidence suggesting that Defendant used Plaintiff's arrest as pretext to terminate her in retaliation for reporting her sexual harassment. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's retaliation claim. (D.E. 24).

## IV. Conclusion

For the reasons discussed above, the Court **GRANTS in part** Defendant's motion for summary judgment. (D.E. 24). Plaintiff may proceed on her Title VII hostile work environment and quid pro quo claims. Accordingly, the Court **LIFTS** the stay in this case and **SETS** a status conference before the undersigned on **November 9, 2026, at 2:00 p.m.** The parties should be prepared to discuss potential mediation, a new scheduling order, and any other matters before trial.

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Signed: Corpus Christi, Texas
October 27th, 2026

[2] The Court notes that Defendant contests the admissibility, at this stage, of Plaintiff's evidence that Defendant knew of Plaintiff's complaint by June 2023. The Court need not resolve this dispute, however, as Plaintiff has failed to demonstrate pretext regardless.